USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/02/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MARILYN FIGUEROA,

                            Plaintiff,

                 -against-

W.M. BARR & COMPANY, INC.,

                            Defendant.

-----------------------------------------------------------------X

**OPINION AND ORDER**

**18-CV-11187 (JGK) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Defendant has moved for sanctions against Plaintiff and her counsel arising from Plaintiff's failure to participate in discovery and to follow the Court's orders. For the reasons set forth below, Defendant's motion is GRANTED.

## Background

      This product liability action arises out of a fire in Plaintiff's kitchen. Plaintiff purchased Defendant's "Goof-Off" product, which is a product that removes spots, stains, gum, varnish, and more. Her stated purpose for using the product was to remove glue from under the floor tiles in her small kitchen. The kitchen has one window. On July 29, 2015, Plaintiff poured the Goof-Off Pro Strength Remover ("Goof-Off") on her floor and let it soak. She then used a wood scraper to remove the glue. At some point, a fire started in the kitchen, causing Plaintiff injury.

      There is no dispute that Goof-Off is highly flammable. The front panel of the Goof-Off package contained the following warnings in red print on a yellow background in English and Spanish:

> DANGER! EXTREMELY FLAMMABLE. HARMFUL OR FATAL IF SWALLOWED. VAPOR HARMFUL. EYE IRRITANT, VAPORS MAY CUASE FLASH FIRE. Read entire label prior to storage.

The side panels of the can contained the following warnings in English and Spanish:

> Do not apply to floors or spread the product over surface areas greater than 1 sq. foot because fire and health safety risks will increase dramatically.
>
> DANGER! EXTREMELY FLAMMABLE VAPORS MAY CAUSE FLASH FIRE OR IGNITE EXPLOSIVELY. KEEP AWAY FROM HEAT, SPARKS, FLAME AND ALL OTHER SOURCES OF IGNITION. Extinguish all flames and pilot lights, and turn off all stoves, heaters, electric motors and all other sources of ignition during use and until all vapors are gone. USE ONLY WITH ADEQUATE VENTILATION TO PREVENT BUILDUP OF VAPORS. Do not use in areas where vapors can accumulate and concentrate such as basements, bathrooms and small, enclosed areas. If using indoors open all windows and doors and maintain a cross ventilation of moving fresh air across the work area. *** IF THE WORK AREA IS NOT WELL VENTILATED, DO NOT USE THIS PRODUCT.

Plaintiff claims, *inter alia*, that the Goof-Off product is defective in design and should not have caught fire under the circumstances in which she used it.[1] Therefore, she charges that Defendant is strictly liable for her injuries. Her counsel informed this Court that Plaintiff had an expert that would testify that the product's flashpoint was too low and that it ignited simply by the action of using a wood scraper to remove the Goof-Off-soaked glue from her floor. The expert never materialized. Defendant contends that Plaintiff failed to comply with the warnings on the can, including with respect to the location where she used it (a small kitchen with little ventilation), the quantity she used (insofar as she applied it to more than one-foot-square area), and not turning off the pilot light in her kitchen.

---

[1] Plaintiff also claims that Defendant failed to provide adequate warnings of the alleged dangers and defects of Goof-Off and that Defendant was negligent in the design of and providing warnings about Goof Off.

**Plaintiff's Conduct During Discovery**

Throughout discovery, Plaintiff has failed to comply with her discovery obligations. She failed to timely respond to interrogatories and document requests, only seeking extensions of time after the due date and in response to an inquiry from Defendant. (ECF Nos. 12, 15.) The responses Plaintiff ultimately provided to Defendant's written discovery were incomplete, requiring the Court's intervention. After being ordered to provide a verification to interrogatory responses (ECF No. 14), Plaintiff did not timely comply with the Court's order and responded only after several follow-ups by Defendant. (ECF Nos. 15-2, 15-3.) When questioned at her deposition, Plaintiff testified that she never read warnings or instructions about using Defendant's allegedly defective product, which directly contradicted her sworn interrogatory responses. (ECF No. 34-2, Bai Decl. Ex. B.)

At multiple case management conferences, Defendant and the Court asked Plaintiff to provide her theory of the case, that is, why the Goof-Off was defective, as this is a key element of her claim. Ultimately, this Court had to order Plaintiff to provide an explanation of her design defect claim to Defendant so that it could understand the nature of the defect and prepare its defense. (ECF No. 23.) However, Plaintiff did not timely comply, requiring further intervention from the Court. (ECF No. 34-4, Bai Decl. Ex. C.)

Expert reports were originally due on October 1, 2019, but the date was extended to November 6, 2019 after Plaintiff missed the original deadline. Plaintiff then failed to meet the November 6 deadline and has never provided an expert report to substantiate her design defect allegation, even though Plaintiff's counsel represented to this Court that he would have

expert testimony to support Plaintiff's claim. Such testimony, of course, is critical to the viability of Plaintiff's design defect claim.[2]

At the close of discovery, Defendant filed a letter requesting a pre-motion conference in connection with an anticipated motion for summary judgment. Plaintiff had three days to provide a written response but did not comply. The Court nonetheless scheduled a conference for November 25, 2019. Defendant also filed the instant motion for sanctions. Plaintiff failed to appear for a scheduled pre-motion conference on November 25, 2019. The Court rescheduled the conference to December 9, 2019. Plaintiff's counsel again failed to appear; however, the Court reached Plaintiff's counsel by phone and conducted the conference with Plaintiff's counsel on the phone. The Court gave Plaintiff until December 20, 2019 to respond to Defendant's motion for sanctions. During the conference, the Court also set a schedule for summary judgment briefing. Plaintiff's counsel did not file an opposition to the motion for sanctions as ordered, nor did he request any extension of the deadline.

---

[2] Expert testimony is usually necessary in products liability cases to provide full context into the product and injury at issue. *Adeghe v. Janssen Pharm., Inc.*, No. 16 CIV. 2235 (LGS), 2018 WL 4112815, at *3 (S.D.N.Y. Aug. 29, 2018) (collecting cases); s*ee In re Mirena IUD Prod. Liab. Litig*., 713 F. App'x 11, 15 (2d Cir. 2017); *Caiazzo v. Volkswagenwerk A. G.*, 647 F.2d 241, 251 (2d Cir. 1981) (noting that expert testimony is useful "to elucidate the mechanics of the accident, to indicate the different reconstructions of the sequence that might be inferred, and to describe the physical injuries sustained by each plaintiff and the damaging forces that could be inferred from those injuries." (internal quotation marks and citation omitted)). Additionally, in a design defect case, plaintiff's liability expert must proffer alternative design and demonstrate that the alternate design "is feasible, practical, economical and safe" or identify "manufacturers of similar equipment that have put the proposed design into use." *Ramos v. Simon-Ro Corp.*, No. 06-CV-6105 (KMK), 2008 WL 4210487, at *8 (S.D.N.Y. Sept. 11, 2008) (citation omitted); *accord Zsa Jewels, Inc. v. BMW of N. Am., LLC*, No. 15CV6519ILGRLM, 2019 WL 5103870, at *9 (E.D.N.Y. Oct. 11, 2019); *see Greenberg v. Larox, Inc.*, 673 F. App'x 66, 69 (2d Cir. 2016). A party generally cannot survive summary judgment on a design defect claim without admissible expert testimony. *See Frazer v. ITW Food Equip. Grp. LLC*, No. 11-CV-9699 CS, 2013 WL 6164486, at *5 (S.D.N.Y. Nov. 22, 2013) (citing *Kass v. W. Bend Co.*, 158 F. App'x 352, 353 (2d Cir. 2005)).

**Legal Standard**

Sanctions serve three fundamental purposes: 1) preventing a party from profiting from its failure to comply with a discovery order; 2) securing the party's compliance with the order and deterring future misconduct by it; and 3) deterring future litigants from non-compliance with discovery rules and orders. *Seena Int'l, Inc. v. One Step Up, Ltd.*, No. 15CV01095PKCBCM, 2016 WL 2865350, at *12 (S.D.N.Y. May 11, 2016) (citing *Update Art, Inc. v. Modiin Publ'g Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)).

A magistrate judge has broad authority to impose discovery sanctions. Orders imposing such sanctions "are ordinarily considered non-dispositive, and therefore fall within the grant of Federal Rule of Civil Procedure ("Rule") 72(a), 'unless the sanction employed disposes of a claim.'" *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 3671036, at *16 (S.D.N.Y. July 18, 2017) (quoting *Seena*, 2016 WL 2865350, at *10). This rule extends to orders precluding the introduction of specified evidence, which are "properly characterized as non-dispositive. . . . [a]s long as the order does not wholly dispose of a party's claim or defense." *Seena Int'l Inc.*, 2016 WL 2865350, at *10 (citing, *inter alia, Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)).

Where, as here, sanctions are sought because a party has "fail[ed] to obey an order to provide or permit discovery," the motion is ordinarily analyzed under Rule 37(b)(2)(A), which permits the court to "issue further just orders," including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). In addition, the court must order the disobedient party to pay the "reasonable expenses, including attorney's fees" incurred by the moving party, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

The only predicates to the imposition of sanctions under Rule 37(b) are a "court order directing compliance with discovery requests" and "non-compliance with that order." *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017). Rule 37(b) applies "notwithstanding a lack of willfulness or bad faith," although such factors may be "relevant . . . to the sanction to be imposed for the failure." *Oz v. Lorowitz*, 2011 WL 803077, at *2 (S.D.N.Y. Mar. 7, 2011) (alteration in original) (quoting *Auscape Int'l v. Nat'l Geographic Soc'y*, 2003 WL 134989 at *4 (S.D.N.Y. Jan. 17, 2003)).

When a party's willfulness or bad faith is involved in failure to make discovery, the sanction of dismissal is proper. *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010); *see Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v.*

*Rogers*, 357 U.S. 197, 212 (1958). "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Davidson v. Dean,* 204 F.R.D. 251, 255 (S.D.N.Y. 2001) (quoting *Davis v. Artuz*, 96 Civ. 7699(GBD), 2001 WL 50887 at *3 (S.D.N.Y. Jan. 19, 2001)).

## **Analysis**

In this case, there is no question that Plaintiff has failed to comply with her discovery obligations. Plaintiff missed multiple deadlines, causing Defendant to have to make applications to the Court to obtain compliance. This burdened Defendant's counsel, who attended the court conferences in person, as well as the Court. Plaintiff failed to provide the long-promised expert report, which Plaintiff's counsel conceded was critical to explaining the theory of the design defect case and to Defendant's preparation of its defense. None of this conduct was in keeping with Plaintiff's obligations under the Rules. All of it violated the cardinal rule, Rule 1. This Rule provides that the Rules must be "construed, administered, and employed by . . . the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Plaintiff's failure to adhere to deadlines and come to court as required resulted in discovery being more drawn out than necessary and more expensive. Further, by failing to provide an expert report, Defendant could not respond to Plaintiff's design defect claim or prepare a rebuttal expert report.

The only real question before the Court is what sanctions are appropriate. In crafting an appropriate sanction courts consider: (1) the history of the failure to comply with court orders;

7

(2) whether the party violating the order was given adequate time to comply with it; (3) the effectiveness of alternative sanctions; (4) whether the noncomplying party was warned of and given an opportunity to argue against the proposed sanction; (5) the prejudice to the adversary caused by the failure to comply; (6) whether the documents at issue would normally be readily obtainable; and (7) the extent of the party's personal responsibility. *Worldcom Network Servs., Inc. v. Metro Access, Inc.*, 205 F.R.D. 136, 141 (S.D.N.Y. 2002) (citing *Burke v. ITT Auto., Inc.*, 139 F.R.D. 24, 33 (W.D.N.Y. 1991))

Defendant seeks dismissal of Plaintiff's case as a sanction. As an alternative, Defendant requests that Plaintiff be precluded from presenting or relying on any expert reports in opposition to Defendant's motion for summary judgment or at trial because she has missed two deadlines and has never provided an adequate excuse for doing so. Here, I find the appropriate sanction is to preclude Plaintiff from presenting or relying on any expert reports. The United States Court of Appeals for the Second Circuit has upheld such a sanction for similar discovery misconduct. *See, e.g.*, *Bastys v. Rothschild,* 154 F. App'x 260, 263 (2d Cir. 2005) ("[W]here the court had emphatically ordered that *all* discovery, including expert discovery, was to conclude by a specified date; where the court had extended that date on several occasions; where the plaintiff, nevertheless, failed to identify any experts within the specified time and failed to articulate a reasonable explanation for its negligence in the district court; and where excusing the belated disclosure would prejudice the defendants who had, as a consequence of plaintiff's failure to identify experts, not retained any of their own, the district court acted within its discretion in refusing to consider the expert submissions. . . .").

All the factors that courts consider when issuing sanctions support such a sanction. Namely, Plaintiff has failed to comply with discovery deadlines and the Court's orders throughout this litigation. Even when the Court gave Plaintiff additional chances to comply by extending deadlines *nunc pro tunc*, Plaintiff failed to comply. Lesser sanctions would not be adequate to address the discovery abuses, given the critical role of expert reports in this case and the prejudice to Defendant in being unable to formulate a full defense in the absence of a timely expert report. It is solely within Plaintiff's power to produce the expert report in support of her claim. The Court also warned Plaintiff's counsel that sanctions could be imposed by further violations, including if he failed to comply with the expert discovery deadlines. Nonetheless, Plaintiff did not heed that warning. Plaintiff herself is not without fault. She provided deposition testimony on a critical issue to establishing liability on her second cause of action–that Defendant failed to provide an adequate warning–that directly contradicted her sworn interrogatory response on this claim. This reflects bad faith in the preparation of sworn interrogatory responses. While it is true that the majority of the misconduct in discovery is attributable to Plaintiff's counsel, she also does not appear to have taken her obligations seriously. The Court has considered Defendant's request for the sanction of dismissal but finds that sanction is too extreme. Plaintiff did participate somewhat in discovery and though she may not be able to support her design defect claim without an expert, she has asserted other claims that are the subject of a pending motion for summary judgment. Plaintiff's response to that motion was due February 10, 2020. Plaintiff should be permitted to respond to that motion, which may include a withdrawal of her design defect claim.

**Attorneys' Fees and Costs**

Rule 37(b)(2)(C) provides that the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "Monetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled." *Seena Int'l Inc.*, 2016 WL 2865350, at *11. The Court has wide discretion in apportioning monetary sanctions. *Id.*

Here, the Court finds that an award of attorneys' fees and costs associated with bringing the instant motion, as well as in connection with several letter motions to compel and Plaintiff's failure to appear at the scheduled conference in November (ECF Nos. 12, 15, 23, 35) is appropriate. Because Plaintiff herself is not an attorney or familiar with discovery obligations, she necessarily relied on her counsel to ensure compliance. There is no excuse for counsel's failure to timely comply with discovery obligations or, at least, timely request extensions. Accordingly, the Court finds that Plaintiff's counsel bears responsibility for this award.

**Conclusion**

Defendant's Motion for Sanctions is GRANTED for the reasons set forth above. Plaintiff is precluded from relying on or introducing any expert reports in response to Defendant's motion for summary judgment or at trial. Additionally, Plaintiff's counsel is required to pay Defendant's attorneys' fees and costs associated with time spent by Defense counsel to bring

the instant motion, as well as in connection with several letter motions to compel and Plaintiff's failure to appear at the scheduled conference in November (ECF Nos. 12, 15, 23, 35).

Defendant shall file a properly supported application for fees and costs, consistent with this Opinion and Order, by **March 16, 2020**. Plaintiff shall have until **March 30, 2020** to respond. No replies shall be permitted. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 34.

**SO ORDERED**.

Dated: March 2, 2020
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge